CARRIER ET AL. *v.* LYNCH ET AL.

[No. 111, October Term, 1955.]

*Decided March 14, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John L. Sanford, Jr.*, with whom was *Thomas F. Johnson* on the brief, for appellants.

*Alexander Harvey, II, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Daniel T. Prettyman, State's Attorney for Worcester County,* on brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Worcester County, in equity, dismissing a bill for a declaratory judgment in a case seeking a construction of the Sunday law, Code (1951), Art. 27, sec. 605, in relation to an "open-air, drive-in movie". The defendants named

in the suit were the Sheriff and the State's Attorney. The complainants were the proprietors of an enterprise known as "Shore Drive-in Movie". The bill alleged that on May 13, 1955, a warrant was issued for the arrest of the appellants, charging them with a violation of the Sunday law, and they were threatened with successive arrests and progressive fines if they continued to show pictures on Sundays. The bill alleged that the Sunday law was inapplicable, and that any delay in determining the question would result in irreparable injury.

In their answer the appellees admitted that there was an actual controversy between the parties. They raised no objection to the decision of the question on bill for declaratory judgment, instead of in the criminal proceeding. The Attorney General raises no objection here. Cf. *Atkinson v. Sapperstein*, 191 Md. 301, and *Borchard, Declaratory Judgments* (2d ed.), p. 1023. The case was heard below upon a stipulation of facts, and the trial court held that Section 605 was applicable.

Code (1951), Art. 27, sec. 605, was enacted in its present form by Ch. 71, Acts of 1874. It repealed and reenacted with slight modifications provisions enacted by Ch. 66, Acts of 1866. It provides: "It shall not be lawful to keep open or use any dancing saloon, opera house, tenpin alley, barber saloon or ball alley within this State on the Sabbath day, commonly called Sunday; * * *." The State contends that the words "opera house" are broad enough to cover the operation in question here.

It is conceded that motion pictures were first shown in the year 1896. They were wholly unknown at the time the statute was adopted, but this would not prevent the statute from being applicable, if the showing of movies is fairly within the statutory classification and the purpose for which the prohibition was set up. Cf. *State v. Cleveland*, 93 N. E. 467 (Ohio), and *Richards v. State*, 143 N. E. 714 (Ohio). The only Maryland case dealing with the words "opera house" is *Callan v. State*, 156 Md. 459 (1929). There the operator of a moving picture parlor was convicted by a jury of violating Section 605.

It was held that the indictment charging the traverser with keeping open and using an opera house was not demurrable, it being for the jury to say whether the offense had been committed.

We think the phrase "opera house" as used in the statute is a generic term, and refers, somewhat grandiloquently, to any structure devoted to or used for theatrical performances. Ford's Opera House in Baltimore is one example of the usage; that theatre was not chiefly devoted to "grand opera". As pointed out by the Supreme Court of Missouri in *St. Louis Amusement Co. v. St. Louis County,* 147 S. W. 2d 667, 669 (Mo.), the opera house for the Paris Grand Opera was completed in 1874. "In magnificence and costliness it was 'easily the first theatre of the Nineteenth Century.' With this high example of splendor and glory even an humble and modest theatre soon became known as an 'opera house,' a more impressive term * * *." We think the generic term includes open-air as well as enclosed structures. From the earliest times dramatic performances have been held in outdoor, or partially outdoor, theatres. In the instant case substantial structures were erected to house the projecting machinery and a confectionery shop, and to support the screen and provide an entrance gate and underground wiring. The appellants have invested over $75,000 in the acquisition of the property and its adaptation to the present use. In *Edmondson Village Theatre v. Einbinder,* 208 Md. 38, 116 A. 2d 377, we recently dealt with a case of alleged unfair competition between an indoor and an outdoor motion picture theatre.

If we had any doubts as to the legislative intent, they would be set at rest by recent legislative history. By Ch. 522, Acts of 1920, an Act was passed by the Legislature permitting the exhibition of motion pictures in Baltimore City on Sundays, subject to a referendum by the voters of that political subdivision. In *Levering v. Supervisors of Elections,* 137 Md. 281, it was held that the Act was invalid. However, another attempt to amend the general law was made by Ch. 287, Acts of 1931, and in *Ness v.*

*Baltimore,* 162 Md. 529, 537, the Act was sustained, and the *Levering* case was overruled. Since that time there have been some forty acts adopted by the Legislature, of which some seventeen relate to exemptions from Section 605 insofar as the showing of motion pictures on Sunday is concerned. Some of these apply to entire counties, some to districts, and others to particular towns. They appear in the Code as sections following the general Section 605. While not controlling, they are clear evidence of the legislative interpretation of Section 605, as including within the prohibition the showing of motion pictures. *Humphreys v. Walls,* 169 Md. 292, 299.

The most recent evidence of the legislative interpretation is found in Ch. 499, Acts of 1955, relating to Worcester County. This Act, designated Section 609A, Art. 27 of the Code, (1955 Supp.), provides that nothing contained in Section 605 shall be construed to prohibit or make unlawful "the exhibition within Worcester County of baseball and motion pictures between the hours of 2:00 P. M. and 6:00 P. M. and 9:00 P. M. and midnight on the first day of the week, commonly called Sunday * * *. Any exhibition of motion pictures * * * on Sundays, except as hereby authorized, shall be unlawful and subject to the provisions and penalties of said §§ 578 and 605 of this article. * * *." This Act was made subject to a referendum of the voters of the County at the next general or special election. If the voters are against baseball and motion pictures on Sunday, they may vote to retain the law as presently in effect. It is difficult to imagine a clearer indication of the legislative interpretation of the existing law. The present suit attempts to anticipate, and render meaningless, the wishes of the electorate to be expressed at the next election.

*Decree affirmed, with costs.*